Filed 5/5/22  P. v. Zuniga CA5
Opinion following transfer from Supreme Court

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONNIE JOSEPH ZUNIGA,<br><br>    Defendant and Appellant. | F078866<br><br>(Super. Ct. No. VCF211993B)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric L. Christoffersen, William K. Kim and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Levy, Acting P.J., Poochigian, J., and Peña, J.

## INTRODUCTION

In 2010, a jury convicted defendant Ronnie Joseph Zuniga of three counts of attempted murder and one count of shooting at an occupied motor vehicle, and found true various enhancement allegations. Following the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to Penal Code section 1170.95, asserting he was entitled to resentencing under the new laws. (Undesignated statutory references are to the Penal Code.) The court denied defendant's petition, concluding he was unable to establish a prima facie showing he was eligible for relief. Defendant appealed the denial of his petition.

We previously affirmed the trial court's order, concluding defendant was ineligible for relief from his attempted murder convictions because the plain language of former section 1170.95, subdivision (a) limited relief to persons convicted of felony murder or murder under a natural and probable consequences theory.

Defendant petitioned for review. The California Supreme Court granted and held the petition and deferred action pending its consideration and disposition in *People v. Lopez*, S258175. It then transferred the case back to us with directions for our court to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). Defendant now argues he is entitled to relief from his attempted murder convictions in light of the developments in the law. The People disagree, arguing defendant's petition was properly denied because the jury was not instructed on the natural and probable consequences doctrine.

We affirm the court's order denying defendant's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2010, a jury convicted defendant of three counts of attempted murder (§§ 664, 187; counts 1–3) and one count of shooting at an occupied vehicle (§ 246; count 4). The jury also found true allegations that a principal personally and intentionally discharged a

handgun during the attempted murders in violation of section 12022.53, subdivisions (c) and (e)(1).

Defendant petitioned the court for resentencing in 2019 using a preprinted form. He checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). He also checked a box indicating he was convicted of first degree felony murder but could not now be convicted because he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. He also checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process."

A week after defendant filed his petition, the court denied it, concluding defendant "was convicted of Three (3) counts of Attempted Murder (in violation of Penal Code Section 664/187) and is unable to establish a prima facie basis of eligibility for relief."

## DISCUSSION

Defendant challenges the denial of his petition for resentencing. We affirm the court's denial.

### 1.    Senate Bill 1437 and Senate Bill 775

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder

3.

liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amends section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability (Stats. 2018, ch. 1015, §§ 2–3.)

The legislation also added section 1170.95, which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, section 1170.95 permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).) Pursuant to Senate Bill 775, effective January 1, 2022, the Legislature amended the language of section 1170.95 to expand the scope of the petitioning procedure in part to defendants convicted of "attempted murder under the natural and probable consequences doctrine." (*Id.*, subd. (a).) The legislation also clarified some of the procedural requirements in the statute.

Pursuant to amended section 1170.95, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1170.95, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner has made such a showing that the petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

Within 60 days after the order to show cause has issued, the trial court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any

4.

remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) At the hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1170.95, subd. (d)(3).)

The admission of evidence at the evidentiary hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## 2. Analysis

Defendant asserts the court erred in denying his section 1170.95 petition as to his three attempted murder convictions. Before the passage of Senate Bill 775, defendant argued that foreclosing him from petitioning for relief from his attempted murder convictions under section 1170.95 violated equal protection. He asserted the court's failure to appoint him counsel during the petition proceedings resulted in a violation of his Sixth Amendment right to counsel during a critical stage of the proceedings and his federal right to due process. He argued the error was structural, requiring per se reversal. In their initial briefing, the People responded defendant was excluded from relief from his attempted murder convictions under section 1170.95 based on the statute's legislative history and plain language. They denied such a conclusion violated equal protection.

They also asserted the court was not required to appoint defendant counsel until it determined defendant fell within the provisions of section 1170.95. Irrespective, they asserted the denial of right to counsel at the prima facie stage was harmless and did not amount to structural error.

In our previous opinion, based on the plain language of former section 1170.95, we rejected defendant's contention he was entitled to relief under section 1170.95 from his attempted murder convictions. Accordingly, we found any alleged error by the court in failing to appoint him counsel was harmless.

Following the California Supreme Court's transfer of this case back to our court, defendant now asserts Senate Bill 775 was an ameliorative change in the law that should apply retroactively. !(Supp AOB: 8-9)! He also argues the trial court's order denying his petition should be reversed and the matter remanded for the trial court to appoint him counsel and consider his eligibility for relief from his attempted murder convictions. !(Supp AOB: 9)! The People agree that in light of the California Supreme Court's decision in *Lewis* and the passage of Senate Bill 775, the trial court erred in failing to appoint defendant counsel prior to denying his petition at the prima facie stage. !(Supp RB: 6)! However, they argue the error was harmless. !(Supp RB: 6-7)! They assert the "record shows the jury could not have convicted [defendant] based on the natural and probable consequences theory of liability" because the jury was not instructed on the natural and probable consequences doctrine. !(Supp RB: 7, 9)! In a supplemental reply brief, defendant concedes "the trial court did not instruct, and the prosecution did not rely, on the natural and probable consequences theory of liability." !(Supp ARB: 10)! But he argues, the given "aiding and abetting instruction as it relates to murder [*sic*] is now legally incorrect." !(Supp ARB: 8)! He contends the instruction is now insufficient because it did not require a finding that defendant "'knows that his conduct endangers the life of another and acts with conscious disregard for life.'" !(Supp ARB: 9-10)!

6.

Following the issuance of our initial opinion, the California Supreme Court issued its decision in *Lewis* in which it condoned the trial court's use of the record of conviction in concluding whether a defendant had made a prima facie showing of eligibility for relief under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) The *Lewis* court cautioned that the prima facie inquiry under subdivision (c) of section 1170.95 is "limited," and "'[a] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" "'However, if the record including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, at p. 971.) The *Lewis* court also held, a petitioner "'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id*. at p. 974.)

And here the record reflects, and the parties agree, the jury was not instructed on the natural and probable consequences theory with regard to defendant's attempted murder convictions.[1] In the absence of instructions on the natural and probable consequences doctrine, the jury could not have convicted defendant of attempted murder based on a theory of liability that is no longer valid following Senate Bill 1437's amendments to sections 188 and 189. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [ "[T]he jurors were not provided any instruction on which they could have found

---

[1]Here, the jurors were given CALCRIM Nos. 400 and 401 on the theory of direct aiding and abetting, as well as CALCRIM No. 600, which advised them that an attempted murder conviction required a finding "[t]he defendant intended to kill [the victim]." !(1 Aug. CT: 244-245)!

7.

[the defendant] guilty of murder under [the natural and probable consequences] doctrine. Rather, under the instructions, the jury necessarily found [the defendant] culpable for murder based on his own actions and mental state"]; *People v. Coley* (Mar. 23, 2022, A159927) __ Cal.App.5th __ [2022 Cal.App. LEXIS 319 at *13 [affirming denial of § 1170.95 petition on attempted murder convictions where jurors were not instructed on natural and probable consequences doctrine].)  And because he was not convicted under a now prohibited theory of liability for attempted murder, defendant is ineligible for relief under section 1170.95.  Thus, we conclude any error in the court's failure to appoint him counsel was harmless.

We also reject defendant's argument the given aiding and abetting instructions are now legally insufficient because they did not require a finding that defendant "knows that his conduct endangers the life of another and acts with conscious disregard for life."  In support of his argument, defendant cites *People v. Gentile* (2020) 10 Cal.5th 830 (*Gentile*).  However, defendant misconstrues *Gentile*'s holding.

The *Gentile* court held Senate Bill 1437 eliminates natural and probable consequences liability for murder regardless of degree.  (*Gentile*, *supra*, 10 Cal.5th at pp. 846–848.)  The *Gentile* court noted, "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life," meaning an aider and abettor can still be convicted of second degree murder under a theory of "implied malice."  (*Id*. at p. 850; see *People v. Powell* (2021) 63 Cal.App.5th 689, 713 [interpreting *Gentile* to "suggest[] an aider and abettor can be liable for implied malice murder as a theory independent of the natural and probable consequences doctrine"].)  However, this statement in *Gentile* has no bearing on this case because "implied malice is an insufficient basis on which to sustain [an attempted murder] charge."  (*People v. Lee* (1987) 43 Cal.3d 666, 670.)

Rather, a specific intent to kill is required to support an attempted murder conviction. (*Ibid.*; see *People v. Stone* (2009) 46 Cal.4th 131, 139–140 ["[T]he mental state required for attempted murder differs from that required for murder. Attempted murder requires express malice, i.e., intent to kill. Implied malice—a conscious disregard for life—suffices for murder but not attempted murder"].) Thus, the court did not err in failing to instruct the jury on implied malice, and *Gentile* does not affect the sufficiency of the aiding and abetting instruction given in this case.

Because the record establishes defendant could not have been convicted of attempted murder under a now prohibited theory of liability, we affirm the court's denial of his section 1170.95 petition for resentencing. For the same reason, we conclude the failure to appoint him counsel was harmless. (See *Lewis*, *supra*, 11 Cal.5th at p. 974.)

## DISPOSITION

The court's order denying defendant's section 1170.95 petition for resentencing is affirmed.